United States District Court
Southern District of Texas
**ENTERED**
October 27, 2017
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **JUAN CARLOS GARZA, ET AL.,** | § | |
| **Petitioners,** | § | |
| | § | |
| **v.** | § | **Civil Action No. B: 17-158** |
| | § | |
| **JANIE E. BENNETT, ET AL.,** | § | |
| **Respondents.** | § | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

On August 9, 2017, Petitioner Juan Carlos Garza ("Garza") filed a petition for writ of habeas corpus, alleging that he has been unlawfully detained by federal immigration authorities, despite possessing a "valid and unexpired U.S. passport, his Texas birth certificate [and] his Texas Driver's License." Dkt. No. 1. Garza sought: a temporary restraining order that he be immediately released from custody; a writ of habeas corpus; and a declaration that he is a United States citizen under 8 U.S.C. § 1503(a). Id. Yolanda Lopez Saldivar – Garza's wife – was also listed as a plaintiff, seeking relief under the Administrative Procedures Act. Id.

In the complaint, Garza alleged that he was being held at the Port Isabel Detention Center. Id. On the same day that the complaint was filed – August 9, 2017 – Garza was released from immigration custody on humanitarian parole. Dkt. No. 13. On August 14, 2017, the Court denied the request for a temporary restraining order as being mooted by Garza's release. Dkt. No. 14. Garza still seeks a writ of habeas corpus and a declaration of citizenship. Dkt. No. 33.

On August 21, 2017, United States District Judge Andrew S. Hanen referred the matter to the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B), to render a report and recommendation as to whether subject matter jurisdiction is present in this case. Dkt. No. 28.

On September 28, 2017, Garza filed his brief concerning jurisdiction. Dkt. No. 32. On October 13, 2017, Defendants Janie Bennett, Elaine Duke, Norma Limon, Jefferson Sessions, Rex Tillerson, and the United States of America (collectively "Defendants") filed their brief. Dkt. No. 33.

After reviewing the record and the relevant caselaw, it is recommended that the petition be dismissed without prejudice, because the Court lacks the jurisdiction to consider the matters presented.

## I. Background

### A. Factual Background

Garza alleges that he was born in May 1983 in Mission, Texas. Dkt. No. 1, p. 2. According to the complaint, he was "delivered by Maria Zamora, a midwife – who is not on the publicly available list of 'suspicious' midwives." Id.

In July 1983, his parents "registered him in Mexico as if he had been born in Reynosa, Tamaulipas, Mexico[,]" because "they thought he would need a Mexican birth certificate to go to school in Mexico." Dkt. No. 1, p. 7.

On August 14, 1983, Garza was baptized in Mexico. Dkt. No. 2-1, p. 13. The baptismal certificate indicated that Garza was born in Mexico. Dkt. No. 1, p. 7.

On October 21, 1983, Garza's American birth certificate was issued. Id., p. 7. The complaint alleges that Garza's mother "was afraid she would get in trouble for having had a baby in Texas, so she did not go see the midwife right away[,]" as the reason for the delay in issuing the American birth certificate. Id.

In 2007, Garza applied for a U.S. passport. Dkt. No. 1, pp. 7-8. The passport was issued in 2008. Id.

In 2008, Garza "applied with the Texas Department of State Health Services (TDSHS) for his Texas Birth Certificate." Dkt. No. 1, p. 8. His application was denied because TDSHS stated that his Mexican birth certificate showed he was born in Reynosa. Id. Garza requested an administrative appeal hearing to contest this finding. Id.

In August 2008, a TDSHS administrative appeal hearing was held; the hearing examiner heard testimony from Garza's parents, as well as an eyewitness to his birth. Dkt. No. 1, p. 8. The hearing officer concluded that Garza was born in Mission, Texas, and directed that "a certified copy of his [Garza's] Texas birth certificate be issued." Id.

After the Texas birth certificate was issued, Garza had his Mexican birth certificate "judicially corrected" to reflect that he was born in Texas. Dkt. No. 1, p. 9. In September 2008, his baptismal certificate was officially changed to show he was born in Mission, Texas. Dkt. No. 2-1, p. 13.

In September 2016, Garza filed a visa petition for his wife, Yolanda Lopez-Saldivar; at the same time, she filed an application for an adjustment of status. Dkt. No. 1, pp. 3-4. Both petitions were premised upon Garza's United States citizenship. Id.

On March 10, 2017, Lopez-Saldivar had an interview at the USCIS office in Harlingen, Texas, concerning her petition. Dkt. No. 1, p. 9. Garza accompanied his wife to the interview. Id. Garza showed the interviewer his "valid and unexpired U.S. passport" as proof of citizenship. Dkt. No. 1, p. 4. The interviewer requested a copy of Garza's baptismal certificate, which he also provided. Id.

On August 7, 2017, Garza went to Reynosa and attempted to return to the United States through the Hidalgo Port of Entry. Dkt. No. 1, p. 4.

Unbeknownst to Garza, the State Department was in the process of revoking his passport based on non-nationality. Dkt. No. 25-2. On August 7, 2017 – the same day that Garza traveled to Reynosa – Eric Lee, an "attorney-adviser" at the State Department placed a revocation notice in the mail. Id. After placing the notice in the mail, Lee updated an unspecified electronic database on August 7, 2017, at 11:31 a.m. Eastern Standard Time, to reflect the revocation of the passport. Id.

Garza has stated in a sworn affidavit that he crossed back into the United States on August 7, 2017 at 11:55 a.m.[1] Dkt. No. 21, p. 4. Efrain De Los Santos, the Chief Customs and Border Protection Officer at the Hidalgo Port of Entry, stated in a sworn affidavit that Garza presented his passport on August 7, 2017 at 12:08 p.m. Dkt. No. 25-1. The passport was then scanned and the computer database indicated that the passport had been revoked. Id.

Garza was then held at the port until approximately 10 a.m. the following morning, August 8, 2017, when he was transported to the Port Isabel Detention Center. Dkt. No. 25-1, p. 3. Before he was transported to the Detention Center – at approximately 11 p.m. the previous night, i.e. August 7, 2017 – Garza signed a notice to appear in immigration court. Id.

On August 9, 2017, Garza was released from the Port Isabel Detention Center and paroled into the United States for "humanitarian" reasons. Dkt. No. 13-4.

On August 23, 2017, the Government filed Garza's notice to appear with the immigration court.[2] Dkt. No. 33, p. 7, n. 9.

**B. Procedural History**

On August 9, 2017, Garza filed a petition for writ of habeas corpus alleging that he had been unlawfully detained by federal immigration authorities despite possessing a "valid and unexpired U.S. passport, his Texas birth certificate [and] his Texas Driver's License." Dkt. No. 1. According to the complaint, Garza was still being held at the Port Isabel

[1] Garza's affidavit does not state if he re-entered at 11:55 a.m. Eastern or Central time. As discussed further in the analysis section, the precise time is jurisdictionally immaterial, but shows how happenstance worked against Garza.

[2] The Government has asserted that the delay in filing the notice to appear with the immigration court was because this Court issued an order prohibiting it from filing the notice to appear. Dkt. No. 33, p. 7, n. 9. Garza filed his petition on August 9, 2017. The Court's stay was in effect between August 10, 2017, and August 21, 2017. Once that order was lifted, the Government then filed the notice to appear with the immigration court.

Detention Center, when the complaint was filed. Id. At the time, Garza sought: (1) a temporary restraining order that he be immediately released from custody; (2) a writ of habeas corpus; and, (3) a declaration – pursuant to 8 U.S.C. § 1503(a) – that he is a United States citizen. Id. Garza's wife also sought relief pursuant to the Administrative Procedures Act, because her "adjustment of status depends on the citizenship of her husband, and she is adversely affected by the constructive revocation of his passport." Id, p. 11.

On August 10, 2017, the District Judge issued an order, pursuant to 28 U.S.C. § 1651(a), precluding Defendants from taking action to place Garza in removal proceedings. Dkt. No. 4. The order was based on the allegation, in the complaint, that Garza had not yet received a notice to appear. Id.

On August 14, 2017, the District Judge noted that Garza had been released from custody and denied the motion for a temporary restraining order as moot. Dkt. No. 14.

On August 21, 2017, the District Judge issued an order, which revoked its prior order of August 10, 2017. Dkt. No. 28. In the second order, the District Judge noted that Garza had already received a notice to appear before he filed suit in this case, which cast doubt on the Court's jurisdiction to consider the case. Id. The District Judge stated that he did not want to definitively rule on the issue of subject matter jurisdiction "until the parties have had the opportunity to brief the issue." Id. The District Judge ordered the parties to brief the issue and referred the matter to the undersigned to prepare a report and recommendation. Id.

On September 28, 2017, Garza timely filed his brief regarding subject matter jurisdiction. Dkt. No. 32. Garza alleges that the Court retains jurisdiction over the habeas claim, because "Garza was detained when the action was filed." Id. Garza also argues that the Court has jurisdiction over his § 1503 claim because the State Department "prematurely" revoked his passport in the government databases. Id. Garza's assertion, that the revocation was premature, is based upon an assertion that the revocation was not official until the letter was stamped and placed in the mail and the letter was not stamped until August 9, 2017 – two days after Garza's passport was revoked in the database. Id. Garza further asserts that

his removal proceedings had not yet commenced when he filed his complaint. Id. Finally, Garza asserts that the Court has jurisdiction under the APA over his wife's claim that Garza is a U.S. citizen. Id.

On October 13, 2017, Defendants timely filed a brief regarding jurisdiction. Dkt. No. 33. Defendants assert that the habeas claim has been rendered moot by Garza's release from custody. They further assert that the Court lacks jurisdiction over the § 1503(a) claim, because the issue of Garza's citizenship arose in the context of his removal proceedings; is currently an issue in those proceedings; and, that Garza is not considered to be "within" the United States for purposes of this statute. Finally, Defendants assert that the APA does not give the Court jurisdiction over Garza's wife's claims. Id.

## II. Applicable Law

### A. Jurisdiction

In every case, the threshold question, before considering the substance of any claim, is whether the court possesses jurisdiction over the claim. This is the case, because federal courts are courts of limited jurisdiction, whose authority exists only within the boundaries established by Congress and the United States Constitution. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583-84 (1999). The plaintiff bears the burden of proving jurisdiction. Choice Inc. of Tex. v. Greenstein, 691 F.3d 710, 714 (5th Cir. 2012).

A court properly dismisses a claim for lack of jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n of Mississippi, Inc. V. City of Madison, Miss., 143 F.3d 1006, at 1010 (5th Cir. 1998).

The Court may look to the following to find a lack of jurisdiction: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming v. U.S., 281 F.3d 158, 161 (5th Cir. 2001).

**B. Habeas Corpus**

In order for a court to have habeas jurisdiction under 28 U.S.C. § 2241, the petitioner must be "in custody" when he or she files the petition. Zolicoffer v. U.S. Dep't of Justice, 315 F.3d 538, 540 (5th Cir. 2003). Physical detention is not required to meet this requirement. Rosales v. Bureau of Immigration & Customs Enf't, 426 F.3d 733, 735 (5th Cir. 2005). "History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus." Jones v. Cunningham, 371 U.S. 236, 240 (1963) (emphasis added).

A habeas petitioner is required to exhaust all available administrative remedies prior to filing a habeas petition. Smith v. Thompson, 937 F.2d 217, 219 (5th Cir. 1991) (citing Hessbrook v. Lennon, 777 F.2d 999, 1003 (5th Cir. 1985)). "The exhaustion of administrative remedies doctrine requires not [only that] administrative remedies selected by the complainant be first exhausted, but instead that all those prescribed administrative remedies which might provide appropriate relief be pursued prior to seeking relief in the federal courts." Hessbrook, 777 F.2d at 1003. Thus, it is the possibility of relief – not the likelihood of success or how long the prescribed remedy make take – that dictates which remedies must be pursued to satisfy the requirement for exhaustion.

**C. Citizenship Determinations**

If a United States citizen or national is denied "a right or privilege as a national of the United States," there is a statutory vehicle for a declaratory judgment that the person is a citizen. 8 U.S.C. § 1503(a).

However, a plaintiff may not file an action under § 1503(a) "if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding." 8 U.S.C. § 1503(a)(1)-(2).

The Fifth Circuit has made clear that "[i]t is the context of how the particular issue of citizenship arose rather than the mere timing of events that determines" whether § 1503(a)(1) can be utilized by a plaintiff. Rios-Valenzuela v. Dep't of Homeland Sec., 506 F.3d 393, 398 (5th Cir. 2007). In other words, § 1503(a)(1) does not countenance a race to the courthouse, but rather looks at the entire context of the events surrounding the case. If the issue of citizenship arose in connection with the removal proceeding, the claim is barred under the removal exception to § 1503(a)(1) and the Court lacks jurisdiction. Id.

**D. Administrative Procedures Act**

The Administrative Procedures Act provides for judicial review of agency actions. 5 U.S.C. § 706(1). As relevant here, the Court only has jurisdiction to review agency actions that constitute "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. If there is "a statutory and regulatory scheme that specifically provides for judicial review," the APA does not apply. Dresser v. Meba Med. & Benefits Plan, 628 F.3d 705, 711 (5th Cir. 2010).

In order for an agency action to be considered final, it must (1) mark the "consummation" of the agency's decision making process and (2) it must be a decision by which "rights or obligations have been determined," or from which "legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 178 (1997).

**III. Analysis**

The Fifth Circuit has observed that "the immigration law of the United States is inexcusably complicated and in need of immediate revision." Villa v. Holder, 464 Fed. App'x. 270, 272 (5th Cir. 2012). This case may be one more example of the accuracy of that appraisal. However, it is not the Court's proper place to re-write the law; that task is for the legislative branch. See Rd-Dr Corp. v. Smith, 183 F.2d 562, 565 (5th Cir. 1950) (It is not the Court's role to determine "if we were legislators [how] we would write the law."). Accordingly, the recommendations made here are based solely on the law and not the Court's view of any equitable considerations.

The Court is cognizant of its jurisdictional limitations and it lacks jurisdiction over all claims made in this case. As to his habeas claim, Garza is no longer "in custody" for habeas purposes, rendering his claim moot. As to Garza's claim under § 1503(a)(1), the removal proceedings exception bars jurisdiction. Finally, the APA does not grant the Court jurisdiction to consider Garza's wife's claims. The Court will address each of these issues in turn.

**A. Habeas Corpus**

Garza has asserted that he has a valid habeas corpus claim. However, he has failed to meet two prerequisites: (1) being in custody; and (2) exhausting his administrative remedies.

**1. In Custody**

At the time that Garza filed his petition, he was being held at the Port Isabel Detention Center. Dkt. No. 1. He has since been released from there, as he was paroled into the United States. Dkt. No. 33-1. His release renders moot any complaint about his detention.

"[F]or a court to exercise habeas jurisdiction over a petitioner no longer in custody, the petitioner must demonstrate that he was in custody at the time he filed the petition and that his subsequent release has not rendered the petition moot, i.e., that he continues to present a case or controversy under Article III, § 2 of the Constitution." Zalawadia v. Ashcroft, 371 F.3d 292, 297 (5th Cir. 2004). No party disputes that Garza was in custody at the time that he filed his petition. However, to the extent that he seeks a writ of habeas corpus to secure his release from the detention center, there is no indication in the record that his current status presents a case or controversy.

Thus, to the extent that Garza is challenging his detention at the Port Isabel Detention Center, the habeas petition is rendered moot. See Lane v. Williams, 455 U.S. 624, 631 (1982) (holding that a habeas action attacking the length of sentence is moot where the petitioner is released).

On the other hand, to the extent that Garza is using the habeas petition to challenge the fact that he is in removal proceedings, he has failed to exhaust all of his remedies.

**2. Exhaustion of Remedies**

Even if the Court considered Garza to be in custody for habeas purposes, he has not exhausted his administrative remedies, which produces the same result – that his case should be dismissed for lack of jurisdiction.

As previously noted, Garza must exhaust all administrative remedies which could potentially provide him relief, not just the ones he believes are convenient or advantageous. Hessbrook, 777 F.2d at 1003. Garza is currently in the immigration court system, with a hearing scheduled for January 4, 2018. Dkt. No. 33-3, p. 1. The immigration system provides him with a route to have his citizenship resolved; should the Board of Immigration Appeals decide that he is not a citizen, he can seek judicial review of that decision in habeas corpus proceedings. 8 U.S.C. § 1252(e)(2)(A) (permitting habeas corpus claims to proceed in the district court against final removal orders when the issue at hand is "whether the petitioner is an alien")[3]; Gondola v. Gonzales, 178 F. App'x 410, 411 (5th Cir. 2006) (court has jurisdiction to review removal orders to determine if petitioner is actually an alien).

The Court understands that this route has the potential to be circuitous, expensive, and time-consuming. It is, however, the route that Congress has established for petitioners to seek habeas review of immigration court orders. Garza's failure to utilize this route means that he has not exhausted his administrative remedies. Hessbrook, 777 F.2d at 1003.

Accordingly, this claim should be dismissed without prejudice for lack of jurisdiction.

---

[3] Normally, any challenges to a removal order must be filed in the court of appeals, but any claims made under 8 U.S.C. § 1252(e) are specifically exempted from that requirement. See 8 U.S.C. § 1252(a)(5) ("a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e).")

**B. Declaration of Citizenship**

Garza seeks a judicial declaration, pursuant to 8 U.S.C. § 1503(a), that he is a United States citizen. Despite his arguments to the contrary, this statutory vehicle is unavailable to him under the facts of this case.

The statute provides: "if any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States," he may sue the head of the department or agency in a federal district court to secure a declaratory judgment that he is a United States citizen. 8 U.S.C. § 1503(a). There is, however, an important limitation: "no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act." Id. 8 U.S.C. § 1252(a)(1)(emphasis added). This provision prohibits the Court from exercising jurisdiction in this case because the question of Garza's citizenship arose "in connection with any removal proceeding."

The Fifth Circuit has held that when determining if the claim to citizenship "arose by reason of, or in connection with any removal proceeding," the deciding factor is not whether the plaintiff filed the complaint before removal proceedings were initiated. Instead, "[i]t is the context of how the particular issue of citizenship arose rather than the mere timing of events that determines the applicability of § 1503(a)(1)." Rios-Valenzuela v. Dep't of Homeland Sec., 506 F.3d 393, 398 (5th Cir. 2007).

It appears to be generally beyond dispute that Garza's citizenship claim arose "in connection" with the Government's decision to detain him at the border, arrest him, place him in custody at the Port Isabel Detention Center and give him a notice to appear in immigration court. Dkt. No. 1. On August 7, 2017 – the same day that he was arrested – Garza was given a notice to appear in immigration court for removal proceedings. Dkt. No. 33-4. In that removal notice, the Department of Homeland Security accused Garza of falsely

representing himself "to be a United States citizen by birth to gain entry to the United States when in fact [he is] a native and citizen of Mexico." Dkt. No. 33-4, p. 1.[4] The notice to appear clearly illustrated the Government's intention to place Garza in removal proceedings.

Based upon the plain language of the notice to appear – which explicitly alleged that Garza had falsely claimed U.S. citizenship – the issue of Garza's nationality "arose . . . in connection with any removal proceeding." Thus, § 1503(a)(1) bars the Court from exercising jurisdiction.

Garza attempts to sidestep the jurisdictional impact of § 1503(a)(1) by asserting that removal proceedings were not instituted until the notice to appear was filed with the immigration court, which occurred after Garza filed his petition in the instant case. While this claim is factually true,[5] it avails Garza nothing.

---

[4] The Court notes that citizenship is solely a question of federal law and that the federal government and federal courts are not legally bound by any determinations made by the State of Texas as to where Garza was born. Garcia v. Kerry, 557 F. App'x 304, 308 (5th Cir. 2014). Thus, despite the earlier determination by a Texas official, the federal immigration authorities are empowered to decide the matter contrary to that state determination.

[5] Despite the Government's argument to the contrary – Dkt. No. 33, p. 7 – the Fifth Circuit has held that "removal proceedings commence when the [Government] files the appropriate charging document with the immigration court." DeLeon-Holguin v. Ashcroft, 253 F.3d 811, 815 (5th Cir. 2001). The parties dispute whether Garza was served with the notice to appear on August 7, 2017 (the date he signed the notice to appear) or August 9, 2017 (the date that he claims he was given a paper copy of the notice to appear). Dkt. No. 33, p. 6, n. 7. The material question is not when Garza was served with a copy of the notice to appear, but when did the Government file the charging papers with the immigration court. DeLeon- Holguin, 253 F.3d at 815. The Defendants state that the notice to appear was filed with the immigration court on August 23, 2017. Dkt. No. 33, p. 7, n. 9. No party challenges this fact.

The Court notes that there was a court order in effect from August 10, 2017, until August 21, 2017, which prohibited Defendants from filing the charging documents in the immigration court. Dkt. Nos. 4, 28. The existence of that court order does not change the fact that Garza filed his complaint with this Court on August 9, 2017, prior to the effective date of the stay. Thus, the stay had no effect upon the order of filings by the parties or the fact that Garza filed his complaint before the government was precluded from filing the removal action with the immigration court.

The question is not whether Garza won a race to the courthouse by filing his complaint before the Department of Homeland Security filed the notice to appear with the immigration court. "It is the context of how the particular issue of citizenship arose rather than the mere timing of events that determines the applicability of § 1503(a)(1)." Rios-Valenzuela v. Dep't of Homeland Sec., 506 F.3d 393, 398 (5th Cir. 2007).

As another Court in this district has found, the important question is whether the "declaratory judgment action was filed to circumvent the administrative removal process." Yi v. U.S., No. CV H-14-3289, 2016 WL 8488349, at *6 (S.D. Tex. Mar. 31, 2016) (Rosenthal, C.J.). "[E]ven if a citizenship claim is asserted before a removal proceeding has begun, that claim may still arise 'by reason of, or in connection with,' the removal proceeding if the context shows that the proceeding motivates the citizenship claim." Id.

In this case, Garza's claim arose in connection with the Government's decision to detain him; give him a notice to appear in immigration court; and, hold him at the Port Isabel Detention Center. Even if the removal proceedings had not officially begun – because the notice to appear had not been filed with the immigration court – Garza's petition was clearly in response to the Government's express intention to institute such proceedings. Thus, his claim to citizenship arose in connection with the removal proceedings.[6]

In some sense, the lack of jurisdiction in this case is related to timing: the time between the State Department revoking the passport in the database and Garza's detention at the border, which occurred within hours of each other. If Garza had received the letter revoking his United States passport and proceeded to file a § 1503(a) petition with the Court,

---

[6] The Government has asserted that § 1503(a)(2) also divests the Court of jurisdiction to consider Garza's claims. Dkt. No. 33, p. 6. The Court need not decide this alternative basis for challenging jurisdiction. The Court lacks jurisdiction over claims of citizenship if either subsection (a)(1) or (a)(2) apply. Rios-Valenzuela, 506 F.3d at 397-99. It is clear that Garza's claim finds its genesis in the pending removal proceedings, barring jurisdiction under § 1503(a)(1). Accordingly, irrespective of when the issue arose or which party filed which cause of action first, Congress has divested this Court of jurisdiction to consider Garza's citizenship, in the current proceedings.

and then the Government initiated removal proceedings, the Court would have jurisdiction. Under those circumstances, Garza's claim to citizenship would have "its genesis outside of the context of removal proceedings." Rios-Valenzuela, 506 F.3d at 399.[7]

In sum, it does not matter – for jurisdictional purposes – whether the Government acted properly in rescinding the passport, or whether Garza filed his complaint prior to the notice to appear being filed with the immigration court, or whether Garza was born in the United States or Mexico. The key question in the jurisdictional inquiry is what motivated Garza to take the action regarding his citizenship.

In the instant case, Garza did not file a lawsuit when his United States passport was revoked. Instead, Garza filed the complaint after he was informed that the Government intended to remove him from the United States. It is the question of what governmental action precipitated the citizenship petition filed by Garza that has controlling effect. Rios-Valenzuela, 506 F.3d at 399. Given that Garza's claim to citizenship arose in connection with the removal proceedings, the Court lacks jurisdiction to consider his claim under § 1503(a)(1).

**C. APA Claims**

Garza's wife has raised an APA claim, arguing that the revocation of her husband's passport will cause her pending visa petition to "doubtless[ly] be denied." The Court lacks jurisdiction to consider her claim.

---

[7] The Court notes that if Garza successfully convinces an immigration judge that he is a citizen and the immigration proceedings are closed on that basis, his claims in this Court would still arise in connection with a removal proceeding and § 1503(a)(1) would still bar jurisdiction in this Court. Rios-Valenzuela, 506 F.3d at 398 (holding that § 1503(a)(1) also "applies to concluded removal proceedings"). In order to avoid such an outcome, Garza would have to file an application for a new passport after his removal proceedings concluded. If that application was denied on the basis of non-nationality, he could then file a declaratory judgment suit pursuant to § 1503(a). This suit would not be barred by § 1503(a)(1) because it would have its genesis in the denial of the new passport application, rather than in the removal proceedings. Rios-Valenzuela, 506 F.3d at 399.

First of all, jurisdiction does not exist under the APA unless the petitioner is challenging a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "A final agency action is one that imposes an obligation, denies a right, or fixes a legal relationship." Veldhoen v. U.S. Coast Guard, 35 F.3d 222, 225 (5th Cir. 1994). By her own admission, Garza's wife's immigration-related petitions remain pending and have not yet been decided. Thus, there is no final agency action as it relates to those petitions and the Court lacks jurisdiction to consider them.

To the extent that Garza's wife wishes to seek an APA claim to review the State Department's decision to revoke Garza's passport, the Court also lacks jurisdiction over this claim. If there is "a statutory and regulatory scheme that specifically provides for judicial review," then the APA does not give the Court jurisdiction. Dresser, 628 F.3d at 711.

In this case, Garza's wife's claims are dependent upon the determination of Garza's citizenship. Indeed, she has no direct claim to relief. Instead, any relief granted to Garza's wife would be dependent upon the determination that Garza is a United States citizen. As discussed earlier, there is a statutory scheme that specifically provides for judicial review of such determinations. Mr. Garza can press his claim for citizenship in the immigration proceedings. If he is unsuccessful, the claims can be judicially reviewed in a habeas proceeding in the district court. 8 U.S.C. § 1252(e)(2)(A). Thus, there is a specific statutory scheme that provides judicial review, making the APA inapplicable in this case. Dresser, 628 F.3d at 71.[8] This claim should be dismissed for lack of jurisdiction.

---

[8] The Court notes, in passing, that the evidentiary standards for an APA claim and a claim under § 1503(a) are very different. Under APA review, Garza and his wife would have to show that the State Department acted "arbitrarily and capriciously," by revoking his passport on the basis of non-citizenship. 5 U.S.C. § 706. This standard is "narrow and deferential" and the Court would not be permitted to favor its judgment of the facts over the agency's judgment of those same facts. Alenco Commc'ns, Inc. v. F.C.C., 201 F.3d 608, 620 (5th Cir. 2000). Thus, the focus of the inquiry would not be on whether Garza was actually a citizen, but rather on whether the Government acted arbitrarily and capriciously by choosing to credit the original Mexican birth records over the American birth records, especially given that the original Mexican birth records predated the American ones by several months. On the other hand, under § 1503(a), the plaintiff

**IV. Recommendation**

It is recommended that the complaint filed by Juan Carlos Garza and Yolanda Lopez Saldivar be dismissed without prejudice for lack of jurisdiction.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1). Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on October 27, 2017.

______________________________
Ronald G. Morgan
United States Magistrate Judge

---

merely has to prove by a preponderance of the evidence that he is a U.S. citizen and the Court decides the issue of citizenship de novo, with no deference accorded to the agency's prior factual determinations. Reyes v. Neelly, 264 F.2d 673, 676 (5th Cir. 1959). Thus, the difference is more than mere timing.